IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: INNOVATIVE ENTERTAINMENT CONCEPTS, INC., <br><br> *Debtor.* <br><br> SUSAN M. LIMOR, Trustee, <br><br> *Plaintiff,* <br><br> *v.* <br><br> WILLIAM CALDWELL HANCOCK, <br><br> *Defendant*. | Case No. 304-01633 <br> Chapter 7 <br><br> Hon. Keith M. Lundin <br><br><br><br> Adv. No. 305-0832 |

## MEMORANDUM OPINION

The issues are whether defendant, William Caldwell Hancock, is entitled to attorney fees for services to the Chapter 11 debtor before conversion and whether the Chapter 7 trustee is entitled to turnover of $10,000 deposited with the defendant as a prepetition retainer. Because Hancock's shifting disclosures regarding the retainer fail to meet the standards set by the Sixth Circuit, disallowance of attorney fees is required and the Trustee is entitled to turnover of the retainer. The following are findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

### FACTS

The debtor, Innovative Entertainment Concepts, Inc., filed Chapter 11 on February 10, 2004. Attorney for the debtor was Defendant Hancock. Filed with the petition was a disclosure of compensation required by 11 U.S.C. § 329(a) and FED. R. BANKR. P.

2016(b). The 2016(b) Statement disclosed that Hancock had received a retainer of $10,000, and that the source of those funds was "the debtor." As required, the 2016(b) Statement included a certification by Hancock that the disclosure was complete.

On April 27, 2004, Hancock filed an Application for Approval of Employment of Debtor's Counsel. The Application stated, "debtor has paid to Hancock a $10,000 retainer for services to be performed for the debtor[.]" The Application was verified by Hancock, under penalty of perjury. On June 10, 2004, the court entered an order approving Hancock's appointment as counsel to the Chapter 11 debtor.

On August 13, 2004, the case converted to Chapter 7 on motion of the United States Trustee. Plaintiff, Susan Limor, was appointed Chapter 7 trustee.

**The Chapter 7 Trustee's Turnover Complaint**

On November 11, 2005, the Trustee filed a complaint against Hancock for turnover of the prepetition retainer. *Limor v. Hancock (In re Innovative Entertainment Concepts, Inc.)*, Case No. 05-832 (Bankr. M.D. Tenn. Nov. 11, 2005). The Trustee asserted that the untapped retainer was property of the Chapter 7 estate, and should be distributed to creditors in accordance with 11 U.S.C. § 726.

On March 10, 2006, Hancock answered the complaint, asserting an attorney's lien on the retainer. In a Pretrial Statement also filed on March 10, 2006, Hancock states for the first time, "the retainer funds . . . were borrowed by the debtor pre-petition specifically earmarked for this use."

On May 26, 2006, the Trustee filed a Motion for Summary Judgment that made the following arguments: 1) prepetition retainers are estate property subject to turnover; 2) Chapter 11 attorney fees in a case converted to Chapter 7 are statutorily subordinated to Chapter 7 administrative expenses; 3) fees should be disallowed because Hancock failed to adequately disclose his fee arrangement with a third party. Hancock did not respond to the Trustee's Motion for Summary Judgment. An order granting the Trustee's Motion was entered June 22, 2006.

On July 3, 2006, Hancock filed a Motion to Set Aside Judgment, alleging lack of notice. In this motion, Hancock states that the retainer came from the mother of the

2

president of the debtor, was not property of the estate and was held in trust for "Mrs. Seifert":

> [T]he retainer is a fund which came into the hands of the applicant from the debtor. The mother of the president of the debtor provided the retainer on the condition that it would be used solely to retain the undersigned to provide the services that the debtor and debtor-in-possession would require if and when the chapter 11 filing should come to pass. By agreement, in the event this money is not used as agreed, it must be returned to Mrs. Seifert. It is, therefore, not property of the estate, although the estate does have an interest in seeing to its use to pay debtor's counsel's fees. . . . It is held in trust by counsel earmarked for payment of legal fees of the undersigned or return to the provider. The estate has no possessory rights or interest therein and no right to dominion and control over it. If not used to pay fees, it must be returned to Mrs. Seifert.

(Motion to Set Aside Judgment at ¶ 4 [*sic*].)

On December 8, 2006, the court entered an Order setting aside the order granting summary judgment to the Trustee. The Order directed Hancock to file a response to the Trustee's Motion for Summary Judgment.

**Hancock's Application for Allowance of Final Compensation**

Parallel to the above activity in the Trustee's adversary proceeding, on May 20, 2006, Hancock filed an Application for Allowance of Final Compensation. The Application gave this account of the retainer:

> 1. . . . Debtor neither had nor expected to have sufficient funds to provide the retainer from cash resources normally available in the ordinary course of business, so debtor's President made arrangements with his mother and the applicant under which she would place $10,000 in trust with applicant for the benefit of the debtor, to be held in trust pending a decision to file a petition under Chapter 11. In the event a filing took place as anticipated, the entrusted funds would be a retainer to be held by applicant to the credit of the debtor for the payment of legal fees to be incurred and awarded to applicant for work done for the debtor in the case. In the event of a sale, which was being pursued in lieu of a Chapter 11 filing, the funds would be returned to the provider. In the event the awarded fees should be less than the retainer, any balance would be returned to the provider.
>
>     * * *
>
> 11. Applicant declares under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

(App. at ¶¶ 1 & 11.)

3

The Chapter 7 Trustee objected to Hancock's Application for compensation. The Trustee asserted that the retainer was property of the estate, available for distribution in accordance with § 726. The Trustee argued that if representations in the fee application were correct, Hancock would not be a disinterested party under 11 U.S.C. § 327 because the newly revealed source of funds was believed to be a significant creditor of the debtor. Hancock's failure to disclose the conflict, the Trustee concluded, disqualified him from any compensation.

A hearing on Hancock's fee application and the Trustee's objection was set for June 20, 2006. Hancock failed to appear at the hearing. An order was entered denying the Application for fees.

On July 3, 2006, Hancock filed a Motion to Alter or Amend or Set Aside Order Denying Final Fee Application of Debtor's Counsel. This motion blamed miscalendaring for the failure to appear at the fee application hearing. In the motion, Hancock stated:

> 7. . . . The retainer is a fund which came into the hands of the applicant from the debtor. The mother of the president of the debtor provided the retainer on the condition that it would be used solely to retain the undersigned to provide the services that the debtor and debtor-in-possession would require if and when the chapter 11 filing should come to pass. By agreement, in the event this money is not used as agreed, it must be returned to Mrs. Seifert. It is, therefore, not property of the estate, although the estate does have an interest in seeing to its use to pay debtor's counsel's fees. It is held in trust by counsel earmarked for payment of legal fees of the undersigned or return to the provider. The estate has no possessory rights or interest therein and no right to dominion and control over it. If not used to pay fees, it must be returned to Mrs. Seifert.
>
> 8. . . . It is submitted that the disclosure was adequate. There is no proof that the owner of the retainer is a creditor of the debtor. Even if that should be the case, it could not possibly have had any effect upon the representation beyond the theoretical potential for a conflict because this fact, if proven, is unknown to the undersigned. The circumstances did not create a conflict or lack of disinterestedness.

(Motion to Alter at ¶¶ 7 & 8.)

The Chapter 7 Trustee contested the Motion to Alter or Amend. The Trustee asserted again lack of disinterestedness. The Office of the United States Trustee filed an objection in support of the Trustee's position. Citing *Henderson v. Kisseberth (In re*

4

*Kisseberth)*, 273 F.3d 714 (6th Cir. 2001); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996), the U.S. Trustee urged that all fees be denied Hancock for his failure to fully and accurately disclose his fee arrangements with the debtor and Mrs. Seifert. The U.S. Trustee observed that it was not until the Chapter 7 Trustee sought turnover of the retainer that Hancock asserted that someone other than the debtor was the source of the retainer.

On September 7, 2006, the court set aside the Order that denied fees, and allowed the parties to go forward with the merits of Hancock's fee application and the Trustee's complaint for turnover.

On November 14, 2006, in anticipation of the joint hearing on Hancock's fee application and the Trustee's Summary Judgment Motion, Hancock filed a verified Amended Disclosure to Application of Wm. Caldwell Hancock for Allowance of Final Compensation. The amended disclosure, Hancock stated, "sets the record straight." Hancock related that approximately two months before the Chapter 11 filing, he met with the debtor's president:

> 3. Those discussions revealed that the corporation had no funds to pay either transaction fees or a Chapter 11 retainer and that it was not expected to have sufficient funds to provide the retainer from cash resources normally available in the ordinary course of business. Accordingly, debtor's President advised the undersigned that he had discussed with his mother arrangements under which she would provide a retainer to be held in trust pending a decision to use same for transaction fees and, if not exhausted in the transaction process[,] to serve as a retainer to engage Applicant to file a petition under Chapter 11 for the corporation. In the event a filing took place as anticipated, the entrusted funds would be a retainer to be held by applicant to the credit of the debtor for the payment of legal fees to be incurred and awarded to applicant for work done for the debtor in the case. In the event of a sale [outside of Chapter 11,] the funds would be returned to the provider. In the event the awarded fees should be less than the retainer, any balance would be returned to the provider. Since the thinking was that Mrs. Seifert would be the provider, at Mr. Seifert's request, the Applicant telephoned Mr. Seifert's mother to confirm this arrangement and understanding.
>
> * * *
>
> 7. Either on the date of filing or one day prior thereto, Mr. Seifert called to request depository account information so that he could expedite deposit of

5

the retainer into applicant's trust account. Shortly thereafter the bank called to confirm that Mr. Seifert had caused a $10.000.00 [*sic*] deposit to be made into the trust account. The Applicant had received nothing from Mr. Seifert or Mrs. Seifert to confirm the arrangements that Mr. Seifert had made or the source of the retainer.

8. At the time of disclosure of receipt of the retainer, it was the understanding of the [Applicant], based on Mr. Seifert's statements at the time he signed the petition, that the retainer had been loaned to the corporation by his mother, or to Mr. Seifert and thence by him to the corporation. Mr. Seifert was so nervous . . . at that time . . . he could not remember . . . the actual arrangement that he and his mother had made. . . . Given this uncertainty, and the absence of any definitive information to indicate that the retainer was not debtor sourced, that the [Applicant] reasonably believed that it was most proper and most conservative to disclose that the source of funds was the debtor. Accordingly, at that time, the [Applicant] disclosed the source of the retainer as the debtor, believing it to be true.

9. [Mr. Seifert] . . . was unable to definitively explain the relationship between the corporation and his mother relative to this money. Given the alternatives, he chose at that time to treat it as a loan to himself which, in turn, was put into the corporation. This is why Mrs. Seifert does not appear as a claimant for this money in Schedule F.

* * *

12. Precluded by fiduciary duty to simply concede ownership to the estate, and concerned based on Mr. Seifert's incomplete recollection that the retainer was subject to a claim by Mrs. Seifert that it belonged to her[,] and a concern that she would concider [*sic*] that it was being held under the understanding reached by telephone . . . disclosure of her interest was made in the original application. . . . [T]he undersigned concluded and became convinced at that time that the retainer belonged not to the corporation but to Mrs. Seifert and so indicated in the original fee application so that the matter could be resolved by the court[.]

13. . . . Upon receipt of the actual bank deposit information showing that the deposit was of a personal check drawn on a personal account of a female named Seifert, the undersigned had three additional conversations with Mr. Seifert. Given the new information, which did little to refresh Mr. Seifert's recollection . . . and a reconstruction of the timetable by the [Applicant] via those discussion, it is now the joint view of the Chapter 7 trustee and [Applicant] that this retainer is most likely property of the estate. [Applicant] has resigned all efforts to make legal sense out of the partial recollections of Mr. Seifert[.]

6

14. Given the foregoing, [Applicant] now concludes that his original disclosure of the source of the retainer was correct[.]

(Amended Dis. at ¶¶ 3, 6 to 9 & 12 to 14.)

In this posture, Hancock's fee application and summary judgment in the Trustee's turnover action finally were heard on the merits on January 9, 2007. Neither Hancock nor the Trustee provided proof whether "Mrs. Seifert" was a creditor of the estate. There is a creditor scheduled with a claim of $30,000 by the name of Heidi Seifert who no one could connect to or disconnect from the retainer. The Seifert Family Limited Partnership is a significant creditor of the estate with scheduled claims of $194,000, as well as a 33% ownership interest in the debtor. Together, Heidi Seifert and the Seifert Family Limited Partnership hold scheduled claims of $224,000 out of total scheduled claims of $491,000.

Hancock, relying on *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222 (Bankr. E.D. Tenn. 2006), argues that Tennessee law provides a lien on his client's retainer. As a secured creditor, he claims entitlement to payment ahead of unsecured, priority and administrative creditors, to the extent of the $10,000 he holds.

The Chapter 7 trustee argued that *Appalachian Star Ventures* misapplies Tennessee law and that a client's retainer does not spawn a security interest in the attorney.[1]

The U.S. Trustee supported the Chapter 7 Trustee's position on the lien issue. The U.S. Trustee's supplemental brief focused on Hancock's entitlement to fees under the disclosure standards imposed by the Sixth Circuit in *Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714 (6th Cir. 2001); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996); *Childress v. Middleton Arms, L.P. (In re Middleton*

---

[1] The trustee raised for the first time in her supplemental brief equitable subordination under 11 U.S.C. § 510 (c)(1) & (2). Although "too little, too late" is a complete answer to this claim, it is not obvious what the Trustee would accomplish under § 510 that is not addressed directly in this context by the specific Code and Rules provisions for attorney compensation. "The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys. To ensure such protection, bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules." *In re Kisseberth*, 273 F.3d at 721 (internal citations omitted).

7

*Arms, L.P.)*, 934 F.2d 723 (6th Cir. 1991). The U.S. Trustee asserts Hancock's inconsistent disclosures with respect to the retainer warrant disallowance of fees.

### DISCUSSION

Section 329 of the Bankruptcy Code provides in relevant part:

> (a) Any attorney representing a debtor in a case under this title . . . shall file with the court a statement of the compensation paid or agreed to be paid . . . for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to-(1) the estate . . . ; or (2) the entity that made such payment.

11 U.S.C. § 329(a) & (b). Section 329 is implemented by Bankruptcy Rules 2014, 2016(b) and 2017. Rule 2016(b) provides that "every attorney for a debtor . . . shall file and transmit to the United States trustee . . . the statement required by § 329 of the Code. . . . A supplemental statement shall be filed within 15 days after any payment or agreement not previously disclosed." FED. R. BANKR. P. 2016(b).

The Sixth Circuit has addressed with consistent firmness the importance of disclosure in the context of attorney fees in bankruptcy cases. *See Henderson v. Kisseberth (In re Kisseberth)*, 273 F.3d 714 (6th Cir. 2001); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472 (6th Cir. 1996); *Childress v. Middleton Arms, L.P. In re Milldeton Arms, L.P.)*, 934 F.2d 723 (6th Cir. 1991). "An attorney in a bankruptcy case has an affirmative duty to disclose fully and completely all fee arrangements and payments." *In re Kisseberth*, 273 F.3d at 720 (citing *In re Plaza Hotel Corp.,* 111 B.R. 882, 883 (Bankr. E.D. Cal.1990)). "Section 329 and Rule 2016 are fundamentally rooted in the fiduciary relationship between attorneys and the courts. [T]he fulfillment of the duties imposed under these provisions are crucial to the administration and disposition of proceedings before the bankruptcy courts." *Downs*, 103 F.3d at 480. "'[A] failure of counsel to obey the mandate of § 329 and Rule 2016 concerning disclosure, . . . , is a basis for entry of an order denying compensation and requiring return of sums already

8

paid.'" *Downs*, 103 F.3d at 477 (quoting *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569, 575 (Bankr. N.D. Tex 1986)).

When there is a failure of disclosure with respect to a debtor's attorney's fee arrangement, the Sixth Circuit has declined to measure the relative egregiousness of the behavior and instead, "the courts have consistently denied all fees." *Downs*, 103 F.3d at 478 (citing *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981); *In re Arlan's Dep't Stores, Inc.*, 615 F.2d 925 (2d Cir. 1979); *In re Ficker*, 131 B.R. 932, 939 (Bankr. E.D. Pa. 1991); *In re Crimson Invs., N.V.*, 109 B.R. 397 (Bankr. D. Ariz. 1989); *In re Kero-Sun, Inc.*, 58 B.R. 770 (Bankr. D. Conn. 1986)). "[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016." *Downs*, 103 F.3d at 479. "Disgorgement may be proper even though the failure to disclose resulted, . . . , from negligence or inadvertence." *In re Kisseberth*, 273 F.3d at 721 (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir.1995) ("Even a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 statement] may result in a denial of all requested fees.").

Like the court in *Downs*, this court is not faced with "'a simple technical breach'" of § 329 and Rule 2016. In successive motions, statements and disclosures—many under penalty of perjury—in this case and adversary proceeding, Hancock has stated that the retainer came from the debtor, was borrowed by the debtor, was loaned to the debtor's president, was paid to Hancock in trust by the mother of the debtor's president and, coming full circle, was provided by the debtor. After more than a year of litigation, perhaps the truth is less important than that this case is a poster child for why complete and careful disclosure of the source of attorney fees and retainers is the only possible rule in bankruptcy practice.

The Trustee and U.S. Trustee have had to claw the facts out of Hancock. And there were good reasons to do so. Hancock's serial disclosures were not consistent with each other. Some of the disclosures raised issue with respect to Hancock's disinterestedness. The timing of the shifting explanations seemed opportunistically to respond to challenges from the Trustee and U.S. Trustee. The result is long and expensive litigation to get what

9

Case 3:05-ap-00832    Doc 49    Filed 03/07/07    Entered 03/07/07 13:59:45    Desc Main
Document    Page 9 of 10

Hancock was obligated to give in the first instance without compulsion: complete and accurate disclosure of the nature and source of the retainer.

Hancock's own narrative of prepetition dealings with the debtor's president and the president's mother reveals that Hancock knew the debtor did not have funds to pay his retainer, and that the funds had to come from elsewhere. Yet Hancock, an experienced bankruptcy attorney, obscured the source of the funds until pursued by the Chapter 7 Trustee after conversion. Timely revelation that Hancock's retainer was borrowed from the debtor's president's mother or held in trust for "Mrs. Seifert" would have either provoked an objection to his retention as debtor's counsel or provided a firm platform for the lien he now asserts. The not-merry chase caused by shifting disclosures leads to the denial of fees.

Like the attorney in *Downs*, Hancock did not respect the duties imposed on attorneys by the Bankruptcy Code and Rules. "'A failure to disclose forthrightly to the court and all creditors and interested parties all of the disclosures required under . . . Section 329 and Bankruptcy Rule 2016 is hardly a position to be defended.'" *Downs*, 103 F.3d at 479 (quoting *Crimson Investments*, 109 B.R. at 402). The failure of full disclosure requires denial of all fees in this case. *See In re Crimson Invs., N.V.*, 109 B.R. at 402 ("This Court concludes that counsel's failure to disclose forthrightly the *source* of its compensation should warrant denial of all compensation.").

"Retainers paid to counsel for the debtor are to be held in trust for the debtor, and the debtor's equitable interest in the trust is property of the estate." *Downs*, 103 F.3d at 478 (citing *In re Rittenhouse*, 76 B.R. 610, 612 (Bankr. S.D. Ohio 1987); *In re Tri-County Water Ass'n Inc.*, 91 B.R. 547, 551 (Bankr. D.S.D. 1988); *In re Leff*, 88 B.R. 105, 108 (Bankr. N.D. Tex. 1988)). The Trustee's Motion for Summary Judgment is granted by separate order.

10